## ROSENTHAL v. CLOTWORTHY.*
### No. 15069.

Court of Appeal of Louisiana. Orleans.
Oct. 21, 1935.

Irwin W. Rosenthal, of New Orleans, for appellant.

R. A. Dowling, of New Orleans, for appellee.

JANVIER, Judge.

Dr. Jonas W. Rosenthal, an oculist practicing in this city, claims of Charles Clotworthy $191, alleging that to be the balance due for professional services rendered to defendant's wife and to his minor son. Plaintiff alleges that between October 18, 1933, and April 2, 1934, he treated Mrs. Clotworthy forty-one times and also treated the son seventy-five times; that for the former he made a total charge of $79 and for the latter a total charge of $122. He admits that he has received the sum of $10 on account and prays for judgment for the balance.

Defendant admits that both his wife and his minor son were treated by plaintiff, but he denies that the visits were as frequent as plaintiff claims, and he maintains that the services were of little value. He also contends that because of his poverty the charges should have been smaller than might otherwise have been justified, but he asserts that in any event they were excessive.

In the court a qua, there was judgment for plaintiff for $100, and he has appealed.

Dr. Rosenthal and his office clerk, a young lady, both testify to the number of visits, and they both state that Mrs. Clotworthy agreed that the services to

the son would be paid for at $20 per month. Their testimony is that Dr. Rosenthal, realizing that the boy would need treatments over a long period of time, agreed to make a monthly charge rather than to charge for each visit, and they testify that the amount charged for services to the boy is based on the agreed price. Mr. Clotworthy knew nothing about this contract and Mrs. Clotworthy denies that there was any such agreement.

Mrs. Clotworthy is very vague in her estimate of the number of visits she and her son paid to the doctor, and she insists that she called on him merely for the purpose of having him test her eyes for glasses.

There can be no question that the visits extended over a period of many months, and it is difficult to believe that if Mrs. Clotworthy called on the doctor only to have her eyes tested for glasses, she would have continued to visit his office so frequently and would have continued to allow him to put drops in her eyes and to continue treating them.

There seems to be no doubt that the condition of the young boy's eyes was very serious and that frequent treatments were necessary. Whether the services were productive of satisfactory results we are unable to determine. Dr. Rosenthal testifies that the headaches of which Mrs. Clotworthy had formerly complained had disappeared, whereas she states that his treatments did her no good at all. It seems certain that the condition of the son's eyes did not improve, but it is equally clear that Dr. Rosenthal had told Mrs. Clotworthy in the first instance that treatments over a long period would be required.

We are impressed by the fact that the bills of Dr. Rosenthal must have been received on several occasions by Mr. and Mrs. Clotworthy without complaint because, although they would have us believe that they did not receive such bills, the evidence gives us the impression that they did. The young office clerk, to whom we have referred, testifies that she put the bills in the mail regularly, and she also states that on one occasion she called at the residence and put the bill in the mailbox and on another occasion she saw Mrs. Clotworthy in person. Mrs. Clotworthy denies this and states that the visits of this young clerk were made for the purpose of ascertaining the condition of the eyes of the Clotworthy boy. It is not probable that Dr. Rosenthal would have sent his clerk to investigate the condition of the boy's eyes, since the clerk was not a nurse and knew nothing about the eyes or the treatment thereof.

Of course, it must be conceded that the amount charged would be excessive if nothing but the putting in of drops and the testing of the eyes for glasses had been required, but the fact that defendant's wife continued to call and continued to bring her young son shows definitely that more than this was necessary.

We have been furnished no evidence by other experts as to the proper charge for such services as those rendered by Dr. Rosenthal, but we notice that the average charge per visit amounts, in the case of Mrs. Clotworthy, to $1.92 and in the case of the young son to $1.62, and if treatments were furnished on each occasion, as Dr. Rosenthal and the office assistant testify, it seems to us that these charges are not exorbitant.

If it may be taken into consideration, the income of defendant, according to his testimony, is in the neighborhood of $150 per month, and Mrs. Clotworthy, who has a part-time employment, also adds a few dollars to the family's income. We feel that for the number of visits made and for the treatments furnished the amount charged is not exorbitant and that, therefore, judgment should be increased.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended and increased to $191 with legal interest from judicial demand, and that as thus amended it be, and it is, affirmed, at the cost of appellant.

Amended and affirmed.